ORIGINAL      Cc: LGIL/KJM/TT

Timothy M. Davidson

PO Box 169

Corvallis, OR 97339

Telephone: (707) 362-0285

E-mail: sealswimtim@icloud.com

PLAINTIFF in Pro Se

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 03 2019

at 9 o'clock and 05 min. A M
SUE BEITIA, CLERK
LS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TIMOTHY MICHAEL DAVIDSON, ) | CV19 00279 LEK .KJM<br>Civil No. _____ |
| Plaintiff, ) | COMPLAINT; DEMAND FOR |
| vs. ) | JURY TRIAL; SUMMONS |
| UNIVERSITY OF HAWAII, ) | |
| Defendant. ) | |
| _____ ) | |

## COMPLAINT

COMES NOW, Plaintiff TIMOTHY MICHAEL DAVIDSON hereby complains against the above named Defendant, alleges and avers as follows:

### NATURE OF CASE

1. Plaintiff TIMOTHY MICHAEL DAVIDSON (hereinafter "Plaintiff") was at all relevant times mentioned herein a resident of the City and County Honolulu, Hawaii, and a citizen of the

State of Hawaii. DAVIDSON is currently a citizen of the State of Oregon since this employment action occurred.

2. Defendant UNIVERSITY OF HAWAII (hereinafter "Defendant UH") was and is a public co-educational research university and a government entity of the State of Hawaii.

3. Plaintiff was hired by Defendant UH on August 1, 2014 as a Faculty Junior Specialist/Athletic Academic Advisor.

4. Plaintiff was informed on December 15, 2017 that his contract was not being renewed based on his age (62 years old,) his association with a disabled family member (mentally disabled adult son,) and in retaliation for not voting for his supervisor's promotion. His final day of employment was April 3, 2018.

5.

## JURISDICTION

5. This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the Age Discrimination in Employment Act of 1967, as amended, and the Americans with Disabilities Act of 1990, as amended.

6. The acts, omissions and transactions alleged herein occurred entirely in the State of Hawaii. Pursuant to 28 U.S.C. § 1391(b), venue is therefore proper in this Court.

7. The administrative prerequisites for filing this cause of action have been fulfilled. A Dismissal and Notice of Rights was issued by the Equal Employment Opportunity Commission ("EEOC") dated March 4, 2019, and received by the Plaintiff on or about March 9, 2019.

## STATEMENT OF FACTS

8. At all times relevant herein, all actions taken by any agent and/or employee of the Defendant UH were within the scope of that individual's office or employment.

9. At all times relevant herein, all allegations made against Defendant UH includes allegations for collective and/or individual action taken through their employees and/or agents.

10. Plaintiff was hired by Defendant UH on August 1, 2014. His original hiring supervisor/Department Chairperson, Jennifer Matsuda, was older than Plaintiff, but she passed away 6 months after Plaintiff was hired, in February 2015.

11. Plaintiff is currently 63 years old. Plaintiff was 58 years old when hired by Defendant UH through Ms. Matsuda.

12. In summer 2015, after Ms. Matsuda's death, Plaintiff was required to "vote" for one of his colleagues to be promoted to the new Supervisor/Department Chairperson. Plaintiff did NOT vote for the successful candidate, Courtney Tsumoto, who then became his new Supervisor/Department Chairperson.

13. Plaintiff was retaliated against by Ms. Tsumoto (age: mid-30's) in a variety of ways to assure his Contract Renewal during his second Probationary period would be unsuccessful.

14. Defendant UH failed to follow then current policy guidelines and procedures under the University of Hawaii Professional Assembly-Board of Regents (UHPA-BOR) Collective Bargaining Agreement. Plaintiff was NOT permitted an opportunity to pre-select one member of the Department Personnel Committee ("DPC") for removal from the DPC (also commonly referred to as "FPC", Faculty Personnel Committee,) as is required by the above mentioned

Collective Bargaining Agreement. This became a critical factor insofar as the Contract Renewal was not-recommended by a narrow vote of 3-2 on November 8, 2017. The DPC/FPC was chaired by Megumi Makino-Kanehiro, who is longtime mentor to Plaintiff's Supervisor/Department Chairperson, Courtney Tsumoto.

15. The DPC's comments in their review of Plaintiff were complimentary towards his job performance; "It is clear that Mr. Davidson is a dedicated and compassionate advisor and it is clear through individual letters that he has made a difference for many students on a daily basis." Further: "In terms of University Service, it appears that Mr. Davidson is an involved, contributing member of the campus."

16. Following the DPC's 3-2 vote to NOT renew Plaintiff's Contract, Supervisor Courtney Tsumoto wrote her Assessment and Recommendation on December 6, 2017, in which she made a number of inaccurate statements regarding Plaintiff's activities. Supervisor Tsumoto commented specifically about Plaintiff's failure to do any research, which was NOT required in his job description per the Union Contract. Further, Supervisor Tsumoto highlighted Plaintiff's failure to take any graduate courses. Again, this is not required of a Faculty Junior Specialist and is only necessary if going up for Promotion.

17. The final contract renewal decision was made on December 15, 2017 and signed off on by Assistant Vice Chancellor Dr. Ronald Cambra. At this in person meeting in Dr. Cambra's office, he told the Plaintiff that he "always supports the decision of my DPC's and Department Chairs." He offered the Plaintiff a letter of recommendation going forward and indicated that Plaintiff would finish out the current academic year which would end the contract. Within less than an hour, Dr. Cambra's personal assistant Stella Hieda, called Plaintiff and indicated that Dr Cambra had made a mistake and please come back to his office today. When Plaintiff returned,

Dr. Cambra apologized for the confusion. The Union contract calls for a "Terminal Year Contract," which in effect changed Plaintiff's final day of service at UH to be one full academic year later, in July 2018. Plaintiff was given a formal letter at this time.

18. Defendant UH hired two new Faculty Junior Specialists/Athletic Academic Advisors in Plaintiff's department following the passing of longtime Chair, Jenny Matsuda who had hired the Plaintiff, and the subsequent promotion of the new, much younger Supervisor/Department Chairperson Courtney Tsumoto. Both new hires were Ms. Tsumoto's former UH co-workers/friends and were of younger age (20's to early 30's). Plaintiff's department had three other Faculty Specialist/Athletic Academic Advisors, Kari Ambrozich and Jim Gillespie, who were in their early 40's, and one other in his 30's, Garrett Clanin. Jim Gillespie was also not awarded contract renewal for similar issues (Mental Health) during the same time period as Plaintiff and has also filed EEOC action which is currently under investigation. No one else in this Department other than Plaintiff was over 50 years old.

19. The two younger new hires, Justin Clapp and Katherine Hannah both were given Contract Renewals. By comparison in terms of job performance, Plaintiff's Athletic Teams excelled under his mentorship as is pointed out in the DPC's comments in statistical reports including both GPA's and Student Evaluation Ratings of their team advisor. Whereas Advisor Justin Clapp had many of his student-athletes lose their academic eligibility under his guidance, and he was given negative evaluations from them, that the Head Football Coach requested and obtained his removal and reassignment from advising that team anymore. Supervisor Courtney Tsumoto set the bar much higher in reviewing the Plaintiff's job performance by judging his Contract Renewal document as if it were a "Tenure Dossier" which it was never intended to be at this stage of the Probationary period per the Union contract.

20. On August 25, 2017 Plaintiff attended a campus-wide workshop on the Contract Renewal/Tenure and Promotion process given by UH Assistant Vice Chancellor Beverly McCreary. In this session the guidelines for submitting the document and supporting materials were explained. Immediately at the close, Plaintiff spoke directly with Beverly McCreary to clarify that in Plaintiff's upcoming Contract renewal document whether it should be lengthy or brief. She was clear that it needed to be "light," as this was not a "dossier." She had told the audience that in campus-wide interests of saving paper, that it could be delivered on a flash drive, or if printed, that only two copies were needed as the Faculty Personnel Committee's would be sharing them.

21. On or about October 6, 2017, Plaintiff hand delivered two copies of his Contract Renewal document to Supervisor Tsumoto's office. She was upset that it was in a plastic see-through cover folder rather than a binder. She further insisted that it be five copies. Plaintiff suggested that this was a direct contradiction to the Asst Vice Chancellor Beverly McCreary workshop. Plaintiff quickly produced three more copies and submitted a total of five in plastic folders to the Supervisor that same day. At this point, Plaintiff was not informed of who was handling his DPC, and not given the opportunity to exclude one member.

22. During his employment, Plaintiff was an active volunteer involved in supporting Mental Health and Homelessness issues serving as a public spokesman for both the National Alliance for Mental Illness (NAMI) and the Institute for Human services (IHS.) Defendant UH was aware of this involvement as Plaintiff appeared in two local TV news broadcasts in Honolulu which were shared with his colleagues.

23. Plaintiff created a specialized program within the Athletic Department to support the emotional needs of Student-Athletes in crisis; Students in Search of Understanding (SISU) which

was not given any guidance or support by Supervisor Tsumoto, despite being nationally recognized. Assistant Vice Chancellor, Ronald Cambra authorized expenditures for travel for Plaintiff to give presentations at two National Conferences of the National Association of Academic and Student-Athlete Development Professionals (N4A.) Plaintiff also produced and directed a 10 minute video focusing on the struggles of three former UH student-athletes whose careers ended prematurely, which was shown at the 2017 conference, and later screened at a department staff meeting attended by the Assistant Vice Chancellor, Ronald Cambra, who proudly hailed it as "very important."

24. Plaintiff is the Legal Guardian of his 31 year old son, a suicide survivor, who is permanently disabled due to a diagnosis of Schizophrenia since his late teens, and who was homeless on the streets of Waikiki for 20 months in 2015-2016 due to his mental illness. In summer 2017, Plaintiff took approved Family Medical Leave time to care for him during a trial period treatment on a new anti-psychotic medication. Plaintiff's Supervisor Tsumoto preferred that this time should have been spent working on his Contract Renewal Document instead, and only reluctantly authorized the time off (approximately three weeks,) upon proper documentation from the Doctors, despite it being the slow time of the academic year when few student-athletes were on island.

25. After Defendant UH informed Plaintiff of the negative Contract Renewal decision on December 15, 2017, Supervisor Tsumoto created a hostile work environment by avoiding any conversation, eye contact, or normal office behavior towards Plaintiff as he continued to serve his Student-Athletes. When Plaintiff's brother passed away in February 2018 in Australia, Supervisor Tsumoto questioned the use of leave time and only reluctantly approved it after Plaintiff threatened to file a grievance with the Union.

26. As a resident of UH MANOA Faculty Housing, Plaintiff was forced to end his lease and move out because during this "Terminal Year" of his employment contract he was no longer on "Tenure Track," and thus was no longer eligible for Faculty Housing. Since Plaintiff was no longer eligible for Faculty Housing, he could not afford to rent an apartment at market rental rates and thus continue to live in Hawaii with its high standard of living. Plaintiff was thus constructively discharged by Defendant UH when he was forced to make the decision to end his employment early and move to Oregon to be able to live within his means.

27. Since being constructively discharged from Defendant UH, Plaintiff has been unable to obtain full time employment in his profession at age 63 years and 10 months of age. Plaintiff was forced to begin collecting Social Security Benefits early, at a much lower amount than full retirement age, in order to survive and care for his son. As his disabled son becomes the Plaintiff's beneficiary upon his death, his survivor's Social Security Benefit will now be greatly reduced for the remainder of his life.

## CAUSES OF ACTION

### COUNT I:

28. Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

29. AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, as amended, prohibits discrimination and termination due to age.

30. The aforesaid acts and/or conduct of the Defendant UH constitutes discrimination as they were acts and/or failure to act by Defendant UH and its employees in direct violation of the Age Discrimination in Employment Act of 1967 (ADEA,) for which Plaintiff is entitled to an award of damages to be proven at trial.

31. Plaintiff has suffered, as a direct and proximate result of the aforesaid conduct, damages by way of loss of earnings and earning capacity, loss of fringe benefits and pension benefits, and other benefits due him.

32. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, great humiliation, outrage, depression, severe anxiety about his future ability to support himself and his family, harm to his employability and earning capacity, painful embarrassment among his friends and colleagues, disruption of his personal life, forced relocation to the mainland, and loss of enjoyment of the ordinary pleasures of everyday life for which he is entitled to an award of general damages.

## COUNT II:

33. Plaintiff repeats and re-alleges all prior allegations as if fully set forth herein.

34. AMERICANS WITH DISABILITIES ACT OF 1990, as amended, prohibits discrimination on the basis of an association with a person with a disability.

35. The aforesaid acts and/or conduct of the Defendant UH and its employees/agents constitutes discrimination as they were acts and/or failure to act by Defendant UH and its agents/employees in direct violation of Americans with Disabilities Act of 1990, as amended, for which Plaintiff is entitled to an award of damages to be proven at trial.

36. As a direct and proximate result thereof, Plaintiff suffered economic, general and special damages, including sickness, mental and emotional distress, and lost income and employment opportunities.

WHEREFORE, Plaintiff prays for Judgement against the Defendant jointly and severally as follows:

A: For reinstatement to employment with Defendant with full benefits; and

B: For all damages to which Plaintiff is entitled, including general damages to be proven at trial; and

C: For special damages including back pay, front pay, and other expenses to be proven at trial; and

D: For punitive damages to be proven at trial; and

E: For payment of reasonable legal fees and costs, and interest, including prejudgment interest; and

F: For such other relief as the Court deems appropriate

DATED: Honolulu, Hawaii, June 3, 2019

_____

TIMOTHY MICHAEL DAVIDSON in Pro Se

Plaintiff